UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CAMOCO, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | EP-18-CV-00279-DCG |
| | § | |
| CARLOS LEYVA *a/k/a* AJ&I | § | |
| CONSTRUCTION CLEAN UP, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Plaintiff Camoco, LLC's "Emergency Motion to Extend Discovery Deadline and Compel Deposition of Non-Party Witness" ("Motion") (ECF No. 79) filed on October 28, 2019. Therein, Plaintiff asks the Court to extend the discovery deadline for 30 days from the date of the Scheduling Order—November 1, 2019, *see* Scheduling Order (ECF No. 55) and compel the deposition of Ms. Carla Moreno ("Ms. Moreno"), a represented non-party witness, during the requested extended discovery period. Mot. at 7.[1] For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion.

### I. BACKGROUND

On July 13, 2018 Plaintiff filed this action against Defendant Carlos Leyva a/k/a/ AJ&I Construction Clean Up ("Defendant") under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204(1), alleging that Defendant breached an employment agreement with Plaintiff when he opened a side business during his employment, operated that

---

[1] On October 30, 2019, Plaintiff also filed his "First Supplemental Emergency Motion to Extend Discovery Deadline and Compel Deposition of Non-Party Witness" (ECF No. 80) ("Supplemental Motion"). Therein, Plaintiff attaches excerpts from the deposition of Ms. Moreno because when the original motion was filed, Plaintiff states that the transcript was not yet available. Suppl. Mot. at 1. The Court will consider First Supplemental Motion as part of Plaintiff's Motion.

business in competition with Plaintiff, and used Plaintiff's employees, business assets, and resources to operate that business. Mot. at 2; *see also* Compl. at 2, ECF No. 2. Plaintiff claims to have lost more than $100,000 in business revenue and customer contracts since Defendant started his side business competing with it. *See* Compl. at 2.

Plaintiff seeks to depose Ms. Moreno, who worked for Plaintiff during the same time Plaintiff employed Defendant and again after Defendant stopped working for Plaintiff. Mot. at 2. Plaintiff asserts that Ms. Moreno is a non-party witness with knowledge of relevant facts in this case because Defendant claims that Plaintiff's business losses "were caused in part by Moreno's poor work performance." *Id.* Moreover, Plaintiff asserts that "Defendant and Moreno are romantically involved and, [based] on information and belief, now work together in business in competition with [Plaintiff]." *Id.*

While Ms. Moreno is not a party to this case, Plaintiff states that she has filed a complaint against it with the Equal Employment Opportunity Commission ("EEOC"), in which she is represented by attorneys Enrique Chavez and Michael Anderson. *Id.* at 2–3. On October 18, 2019, Plaintiff served Ms. Moreno a subpoena for her testimony at a deposition on October 25 regarding the above-captioned case. *See* Notice, ECF No. 78. On October 23, Plaintiff's attorney in the EEOC matter, Nathan Pearman, emailed Ms. Moreno's attorneys to inform them that "he would telephonically attend the deposition" of their client. Mot. at 3. But the next day, Ms. Moreno's attorneys responded to Pearman's email, stating that they would not attend the deposition and that:

> Our firm does not represent Carla Moreno in the case of *Camoco, LLC v. Carlos Leyva*. We do not intend to make an appearance in that case. Ms. Moreno is not a party in that case.
>
> We do not consent to any questioning of Ms. Moreno, at the deposition for the Leyva matter [sic], in any way concerning Ms. Moreno's EEOC charges or claims

at the deposition for the unrelated Leyva matter, any questions to Ms. Moreno regarding her EEOC charges are prohibited by the Rules of Professional Conduct.

*Id.*, Ex. A at 2, ECF No. 79-1.

Before Ms. Moreno's deposition began on October 25, 2019, Plaintiff's attorney in the instant case spoke with one of Ms. Moreno's attorneys by phone. *Id.* at 3. Ms. Moreno's attorney told Plaintiff's attorney that "he did not object to Moreno being deposed, but [that] he would not attend the deposition and objected that any questioning of Moreno about her past or present employment would violate the Rules of Disciplinary Conduct." *Id.* at 3–4. Out of an abundance of caution, Plaintiff's counsel limited his questioning of Ms. Moreno during the October 25 deposition. *Id.* at 4. Plaintiff's counsel then suspended the deposition pending the outcome of the instant motion to compel. *Id.*

## II. APPLICABLE LAW

### A. *Scope of Discovery*

Under Rule 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevant information encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party." *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001) (quoting *Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999)). "The party seeking discovery bears the initial burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Reynolds v.*

*Cactus Drilling Co., LLC*, No. MO15CV00101DAEDC, 2015 WL 12660110, at *2 (W.D. Tex. Dec. 21, 2015). However, "[o]nce the party seeking discovery establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted." *Id.*

The scope of discovery is within the sound discretion of the trial judge, *see Freeman v. United States*, 556 F. 3d 326, 341 (5th Cir. 2009), who may "tailor discovery narrowly and . . . dictate the sequence of discovery," *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). However, the Court must limit discovery, if it determines, on motion or on its own, that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Rule 26(b), although broad, may not be used "as a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (5th Cir. 2010).

### B. Subpoenas and Motion to Quash or Modify Subpoenas

Federal Rule of Civil Procedure 30(a)(1) provides that a party may depose any party or non-party and compel their attendance to the deposition by a subpoena under Rule 45. Fed. R. Civ. P. 30(a)(1). Rule 45 governs discovery from non-parties through the issuance of subpoenas. *See* Fed. R. Civ. P. 45 advisory committee's notes to 2013 amendment (In Rule 45, "'person' is substituted for 'party' because the subpoena may be directed to a nonparty."). As with any other forms of discovery, the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b). *See Chamberlain v. Farmington Sav. Bank*, No. 3:06CV01437 CFD, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007) (citing, *inter alia*, Fed. R. Civ. P. 45 advisory committee's notes

to 1970 amendment (stating "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules")); *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236 (D. Minn. 2013) ("[S]ubpoenas issued under Rule 45 are subject to the same constraints that apply to all of the other methods of formal discovery." (internal quotation marks and citation omitted)).

### C. *Motions to Compel Discovery*

Under Federal Rule of Civil Procedure 37(a)(3)(B)(i), a party seeking discovery may move for an order compelling an answer, designation, production, or inspection when "a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37 (a)(3)(B). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

### III. DISCUSSION

### A. *Extension of Deadline*

While Plaintiff's instant motion was pending, the parties filed on November 1, 2019, a "Stipulation Regarding Extension of Discovery Deadline" (ECF No. 82), in which the parties extended the Scheduling Order discovery deadline from November 1, 2019, *see* Scheduling Order (ECF No. 55), to December 1, 2019. Accordingly, the Court DENIES as MOOT Plaintiff's motion as to the extension of the discovery deadline.

### B. *Compelling Ms. Moreno's Testimony*

Plaintiff moves to compel Ms. Moreno's deposition after her attorneys declined to consent to Plaintiff asking any questions about her past employment with Plaintiff, her separation from it, her current employment, and anything relating to her EEOC discrimination claim. Mot. at 4; *see also* Suppl. Mot., Ex. 1 at 3 (ECF No. 80-1). Plaintiff claims that questions on these

subjects are particularly relevant to its claims against Defendant and to Ms. Moreno's credibility as a witness in this case, even though the facts here and those in the EEOC charge may overlap and be jointly relevant. Mot. at 4–5. Ms. Moreno's attorneys communicated their opposition to questions on these subjects after stating that they would not attend Ms. Moreno's deposition because they do not represent her in this case. *Id.*, Ex. A at 2, ECF No. 79-1. Further, Ms. Moreno's attorneys contend that if Plaintiff makes any such questions, then Plaintiff would be violating the Rules of Professional Conduct—namely, Texas Disciplinary Rule of Professional Conduct 4.02.[2] Accordingly, the Court will first address whether Plaintiff would be violating Rule 4.02 under these circumstances and then, whether Plaintiff can still depose Ms. Moreno on these facts.

**1. Texas Disciplinary Rule of Professional Conduct 4.02**

Texas Disciplinary Rule of Professional Conduct 4.02 provides that:

> In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Tex. Disciplinary R. Prof'l Conduct 4.02(a) (2019). Specifically, Rule 4.02 prohibit all communications between a lawyer and a represented person only when:

> (1) the communication occurs in the course of the lawyer's representation of a client or the lawyer's interests;
> (2) the person with whom the lawyer communicates is represented;
> (3) the communication is on the subject of both the lawyer's representation and the person's representation; and
> (4) the lawyer knows that the person is represented on that subject.

---

[2] The Local Rules of this district adopt by reference the standards of professional conduct set out in the Texas Disciplinary Rule of Professional Conduct for all attorneys permitted to practice before the Court. *See* W.D. Local R. AT-7(a); *Del Mor Logistics, LLC v. GB Carriers, LLC*, EP-14-CV-053-DB, 2014 WL 12580441, at *2 (W.D. Tex. July 7, 2014).

*In re Newell*, 234 P.3d 967, 972 (Or. 2010) (analyzing the text and purpose of Oregon's Rule of Professional Conduct ("RPC") 4.2); *see also* § 9:2. Rule 4.02 Communication with person represented by counsel, 48A Tex. Prac., Tex. Lawyer & Jud. Ethics § 9:2 (2019 ed.) (noting that Oregon's RPC 4.2 is the counterpart to Texas' Rule 4.02). Rule 4.02 does not "prohibit communication between a lawyer's client and persons . . . represented by counsel, as long as the lawyer does not cause or encourage the communication without the consent of the lawyer for the other party." Tex. Disciplinary R. Prof'l Conduct 4.02(a) cmt. 2.; *see also In re News Am. Pub., Inc.*, 974 S.W.2d 97, 100 (Tex. App.—San Antonio 1998), *subsequent mandamus proceeding sub nom. In re Users System Services*, Inc., 22 S.W.3d 331 (Tex. 1999). A lawyer may also engage in *ex parte* communications with a represented party without the knowledge or consent of that party's lawyer if "authorized by law to do so." Tex. Disciplinary R. Prof'l Conduct 4.02(a). The purpose of the rule is "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." *In re News*, 974 S.W.2d at 100 (internal citations omitted). The rule protects the represented party not only from the influences of "opposing counsel's 'calculated and self-serving approaches' [but also] from 'misguided but well-intended communications.'" *Id.* (internal citations omitted).

Plaintiff's first argument is that Rule 4.02 does not apply to limit its examination of Ms. Moreno because (1) Plaintiff's counsel in this case does not represent Plaintiff in the EEOC matter; and (2) Ms. Moreno is unrepresented in this case. Mot. at 5. In support, Plaintiff cites to American Bar Association ("ABA") Model Rule of Professional Responsibility 4.2,[3] from which

---

[3] The ABA Model Rule of Professional Responsibility 4.2 provides that:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the

-7-

Texas Rule 4.02 is modeled after, and contends that "both rules state that '[i]n representing a client,' the lawyer may not communicate 'about the subject of the representation' with a person represented by another lawyer 'in the matter[.]'" *Id.* (alterations in original). In other words, at issue is the scope of Rule 4.02's covered communications—namely, "*the subject of the representation.*" Tex. Disciplinary R. Prof'l Conduct 4.02(a) (emphasis added). To date, no Texas ethics opinion or judicial decision has addressed this issue.

The Court finds that Plaintiff's argument fails for multiple reasons. First, Plaintiff misunderstands the extent to which Local Rule AT-7 "permits consultation of the ABA Model Rules of Professional [Responsibility]." Mot. at 5. Plaintiff appears to interpret Local Rule AT-7 to allow unfettered consultation of the ABA Model Rules for issues regarding professional conduct. But instead, Local Rule AT-7 permits consultation of the ABA Model Rules of Professional Conduct only "[f]or matters not covered by the Texas [Disciplinary Rules of Professional Conduct]." W.D. Local R. AT-7(a). Here, Texas Disciplinary Rule of Professional Conduct 4.02 covers the same matters as ABA Model Rule of Professional Responsibility 4.2 because both "prohibit an attorney representing a client from communicating about the subject of the representation with a party the attorney knows to be represented by another attorney[,] . . . without authorization from the other attorney, the law, or the court." *Del Mor Logistics*, 2014 WL 12580441, at *2. Thus, pursuant to Local Rule AT-7, the issue before the Court must be analyzed under Texas Rule 4.02 and not under ABA Model Rule 4.2.

Second, while Texas Rule 4.02 is modeled after ABA Model Rule 4.2, the plain text of Rule 4.02 "is considerably broader in scope than the Model Rule." § 9:2. Rule 4.02

---

matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Model Rules of Prof'l Responsibility R. 4.2 (Am. Bar. Ass'n 2002).

Communication with person represented by counsel, 48A Tex. Prac., Tex. Lawyer & Jud. Ethics § 9:2 (2019 ed.). Rule 4.02 is broader in scope because it prohibits a lawyer from communicating about "the subject of the representation" with a person represented by another lawyer "*regarding that subject.*" Tex. Disciplinary R. Prof'l Conduct 4.02(a) (emphasis added). By contrast, ABA Model Rule 4.2 prohibits a lawyer from communicating about "the subject of the representation" with a person represented by another lawyer "*in the matter.*" Model Rules of Prof'l Responsibility R. 4.2 (Am. Bar. Ass'n 2002) (emphasis added). Put differently, Rule 4.02 covers communications between a lawyer and a represented person about subjects that may touch on *any legal matter* for which the latter is represented. *See Newell*, 234 P.3d at (holding that Oregon Rule of Professional Conduct 4.2—which is substantially similar to Texas Rule 4.02—was not limited to the specific proceedings in which the party is represented, and that it covered any communications related to the subject matter that necessarily involved such proceedings). Meanwhile, ABA Model Rule 4.2 is limited to communications between a lawyer and a represented person when the latter is represented in *the specific legal matter* on which the communications are based upon. *See People v. Santiago*, 925 N.E.2d 1122, 1129 (Ill. 2010) (agreeing with the State in that the drafters of Illinois Rule of Professional Conduct 4.2—which is substantially similar to ABA Model Rule 4.2—"intended the application of the rule to be case specific: specific to the matter in which the party is represented.").

The broader scope of Rule 4.02's plain text is consistent with what the rule's comments and Texas state courts have stated is the main purpose of the rule: "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." *In re News*, 974 S.W.2d at 100 (internal citations omitted); Tex. Disciplinary R. Prof'l Conduct 4.02(a) cmt. 1 ("[T]his Rule is directed at efforts to

circumvent the lawyer-client relationship existing between other persons . . . and their respective counsel."). It appears to the Court that the drafters' main concern was the potential for attorneys, who are representing clients with adverse interests to those of the represented persons, to influence such persons outside the presence or without the consent of their own counsel. Accordingly, it stands to reason that it would make little practical sense for the rule to be oblivious to communications touching on subjects relating to matters for which such persons are represented.

For that reason, Plaintiff fails to persuade the Court to adopt the narrower view by citing to the ABA Model Rule. As discussed *supra*, ABA Model Rule 4.2 does not govern this case; Texas Disciplinary Rule of Professional Conduct 4.02 does. To be sure, Texas Rule 4.02 was modeled after ABA Model Rule 4.2, but the plain text of Rule 4.02 strongly indicates that its drafters intended its application to differ. Therefore, Plaintiff's counsel may violate Rule 4.02 if he asks Ms. Moreno any questions eliciting answers that are imbued with facts touching on the subject matter of her EEOC charge against Plaintiff. On that basis, Plaintiff may only ask Ms. Moreno questions with her attorneys' consent—which the record establishes that he does not have—or if he is "authorized by law to do so." Tex. Disciplinary R. Prof'l Conduct 4.02(a).

With that in mind, Plaintiff alternatively argues that, even if applicable, Rule 4.02 does not limit its examination of Ms. Moreno because her deposition was "authorized by law" after she was subpoenaed to testify in this case. Mot. 5. The precise scope and meaning of the phrase "authorized by law" has yet to be the subject of a reported Texas ethics opinion or judicial decision in the context of depositions. However, the same language was at issue in an analogous case before the Oregon Supreme Court where it construed that state's counterpart to Rule 4.02.

In *In re Newell*, 234 P.3d 967, 972 (Or. 2010), an accountant was alleged to have embezzled funds from the company that employed him and from a second company that had later purchased the employer-company. *Newell*, 234 P.3d at 968. The accountant's wrongdoing spawned three lawsuits: (1) a civil lawsuit by the employer-company against the accountant for the funds he embezzled; (2) a criminal action against the accountant for embezzlement; and (3) a civil lawsuit by the second company against the employer-company for overpayment resulting in part from the accountant's embezzlement. *Id.* at 968–69. While the second civil case was approaching trial, the first civil case settled, and the accountant was awaiting sentencing in the criminal case. *Id.* at 969. The second company's counsel—the respondent in the disciplinary action—unsuccessfully attempted multiple times to interview the accountant through his attorney in the criminal case because the accountant was not represented in the second civil case. *Id.* As the trial date neared, the respondent issued a notice of deposition and subpoenaed the accountant without advising his counsel in the criminal case. *Id.* at 969–70. The accountant appeared for his deposition without his counsel and he was questioned extensively about matters germane not only to the relevant civil lawsuit, but also to the criminal action. *Id.* at 970–71. After he was reported to the state bar's disciplinary authorities, the respondent argued that his communications with the accountant were "authorized by law" because he had subpoenaed the accountant prior to the deposition in compliance with the Oregon Rules of Civil Procedure. *Id.* at 974.

The Oregon Supreme Court disagreed with the respondent in his broad reading of the "authorized by law" exception. *Id.* The court noted that this broad reading was particularly problematic because it meant that:

> [A]s long as a lawyer can subpoena a nonparty witness to testify at trial or in a deposition before the witness has an opportunity to contact his or her own lawyer, the "authorized by law" exception would permit the lawyer to ask that witness unlimited questions without any opportunity for the witness's lawyer to protect

his or her client's interests. That interpretation of the exception, if accepted, would undermine the purpose of the rule.

*Id.* As such, the Oregon Supreme Court held that the respondent was not "authorized by law" just because he had complied with the applicable rules of civil procedure pertaining to the taking of depositions of non-party witnesses. *Id.* at 976.

The Court finds that Plaintiff's argument is practically undistinguishable from that of the respondent's in *Newell*. Nevertheless, Plaintiff attempts to distinguish his argument by arguing that Federal Rule of Civil Procedure 45 provides an exception to Rule 4.02(a), citing to a 2002 opinion from the Texas Attorney General in which a Texas Workers' Compensation Commission rule was deemed to provide an exception to Rule 4.02(a). Mot. at 5 (citing Tex. Att'y Gen. Op. No. JC-0572 (Nov. 5, 2002)). In that opinion, the issue was whether the Commission's rule requiring insurance carriers, employers, and health care providers to send copies of all written communications related to a claim to both the represented claimant and the claimant's attorney provided an exception to Rule 4.02(a). *Id.* This requirement, or notice provision, placed attorneys representing insurance carriers, employers, and health care providers "in a difficult and unfair position" because compliance with the Commission's rule would violate Rule 4.02. *Id.* The Texas Attorney General opined that since state case law held that statutory notice provisions provided an exception to Rule 4.02,[4] then "[a] procedural notice or service requirement imposed by an administrative rule . . . may also provide an exception to Rule 4.02(a)" because rules and regulations promulgated "by an administrative agency acting within its statutory authority have the force and effect of legislation." *Id.* (citing *Lewis v. Jacksonville Bld. Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976)). Further, the Texas Attorney General found that the rule was still consistent with Rule 4.02's purpose, reasoning that:

---

[4] *See Lee v. Fenwick*, 907 S.W.2d 88 (Tex. App.—Eastland 1995, writ denied).

> [T]his procedural rule, which serves to keep claimants fully informed of the status of their claims through the receipt of written communications that must also be sent to their attorneys, *see* 24 Tex. Reg. 6488, 6489 (1999) (explaining purpose of amendment to rule), does not appear to provide attorneys with an opportunity to take advantage of claimants or to undermine claimants' relationships with their attorneys.

*Id.*

But the issue in the Texas Attorney General's opinion is distinguishable from the issue in the instant case. Specifically, they are distinguishable because Plaintiff's argument impliedly conflates the functions of Federal Rules of Civil Procedure 30 and 45. Rule 30 provides that a party may depose any party or non-party and compel their attendance to the deposition by a subpoena under Rule 45. Fed. R. Civ. P. 30(a)(1). The two rules may interplay with one another, but their function in the context of attorney communications with represented persons differs. Rule 30 relates to the communications between an attorney and a represented person that take place during the *examination by oral questions*—a deposition—for purposes of discovery. *Id.* In contrast, Rule 45 relates to the communications between an attorney and a represented person to *compel the attendance* of such a person to the deposition, that is, by issuance of a subpoena. Fed. R. Civ. P. 45. Compelling a deponent's attendance to a deposition via a subpoena under Rule 45 appears analogous to the Commission's rule in the Texas Attorney General's opinion because they both function as notice provisions and "do[] not appear to provide attorneys with an opportunity to take advantage of [the represented persons] or to undermine [their] relationships with their attorneys." Tex. Att'y Gen. Op. No. JC-0572 (Nov. 5, 2002). However, an examination by oral questions for purposes of discovery—a deposition under Rule 30—does provide attorneys with such an opportunity, and if deemed to satisfy the "authorized by law" exception, "[s]uch a conclusion would

minimize the attorney's ethical obligation under the Rule and would create an exception that would threaten to swallow the Rule." *Monceret v. Bd. of Prof. Resp.*, 29 S.W.3d 455, 461 (Tenn. 2000). Thus, "[t]hese are two separate communications . . . [and] [j]ust because counsel may have issued a *subpoena* permissible under [Rule 4.02] does not mean that counsel's later *deposition* of the witness pursuant to that subpoena is also protected[.]" *Parker v. Pepsi-Cola Gen. Bottlers, Inc.*, 249 F. Supp. 2d 1006, 1011 (N.D. Ill. 2003) (emphasis in original).

Therefore, the Court concludes that the deposition of represented persons under Federal Rule of Civil Procedure 30 does not satisfy the "authorized by law" exception to Texas Disciplinary Rule of Professional Conduct Rule 4.02 just because attorneys have compelled their attendance to the deposition via subpoena under Federal Rule of Civil Procedure 45. As such, Plaintiff's counsel is not "authorized by law" to depose Ms. Moreno just because he issued her a subpoena in compliance with Federal Rule of Civil Procedure 45.

To this end, Plaintiff's counsel may only be "authorized by law" to depose Ms. Moreno on the requested subjects if authorized by court order. Compared to ABA Model Rule 4.2, Texas Rule 4.02 does not include the phrase "authorized by law *or a court order*." Model Rules of Prof'l Conduct R. 4.2 (2002) (emphasis added). Whether the phrase "authorized by law" in Rule 4.02 includes authorization by court order is not covered in the rule's comments. Nor is this question covered by a Texas ethics opinion or judicial decision. Accordingly, under Local Rule AT-7, the Court consults the ABA Model Rules of Professional Responsibility and their pertinent interpretive opinions. *See* W.D. Local R. AT-7(a).

Before Model Rule 4.2 contained the phrase "authorized by law *or a court order*",[5] the ABA issued a formal opinion in 1995 in which it defined the "authorized by law" phrase to include a court order. *See* ABA Committee on Ethics and Professional Responsibility Formal Opinion 95-396 at 20 [hereinafter "ABA Formal Opinion 95-396"]. The formal opinion particularly noted that "in appropriate circumstances, a court order could provide the necessary authorization." *Id.* (citing *United States v. Lopez*, 989 F.2d 1032, 1099 (9th Cir. 1993), *opinion amended and superseded*, 4 F.3d 1455 (9th Cir. 1993)). Since the ABA's 1995 formal opinion, "courts have generally agreed that they have the power to permit such ex parte communications in particular circumstances." *Wagner v. City of Holyoke*, 183 F. Supp. 2d 289, 292 (D. Mass. 2001). In 2002, Model Rule 4.2 was revised and amended to include the phrase as it reads today to reflect the ABA's 1995 formal opinion interpretation and "clarify that a court may permit or prohibit contact in a particular case." *Palmer v. Pioneer Inn Assocs., Ltd.*, 59 P.3d 1237, 1241 n.18 (Nev. 2002).

Texas Rule 4.02 as it reads today was first adopted in October 1989 and became effective on January 1990—five years before the 1995 opinion interpreting the phrase "authorized by law" to include court orders. *See* Tex. Disciplinary R. Prof'l Conduct 4.02(a); ABA Formal Opinion 95-396. Accordingly, the Court finds that the phrase "authorized by law" in Texas Rule 4.02 includes authorization by court order. And thus, the Court now considers whether to authorize Plaintiff to depose Ms. Moreno based on the relevance of the information it seeks.

---

[5] In 1995, Model Rule 4.2 provided that:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person that the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Model Rules of Prof'l Responsibility R. 4.2 (1995).

## 2. Relevance

Plaintiff argues that facts related to Ms. Moreno's past employment, her present employment, and her EEOC charge against Plaintiff are all relevant to this case. Mot. at 4. As a threshold matter, Plaintiff has the burden of proving that the information sought is relevant to this action. *See Reynolds*, 2015 WL 12660110 at *2. Plaintiff argues that information he seeks from Ms. Moreno is relevant because (1) she and Defendant were employed by Plaintiff during the same period of time; (2) Defendant "stated his belief that [Plaintiff's] losses were caused in part by [her] poor work performance'"; (3) she and Defendant are romantically involved; (4) she presently works together with Defendant in another business in competition with Plaintiff; and (5) specifically to the EEOC charge, it speaks to her credibility as a witness in the instant case. Mot. at 2, 4. Ms. Moreno's attorneys do not object to the relevance of the information Plaintiff seeks, but merely do not consent to questions related to her termination and her allegations to the EEOC. *See* Suppl. Mot. at 3 ("MR. ANDERSON: . . . We're not really concerned about the fact, you know, she admits she was an employee, what she was doing there, describe how she was a witness. It's specifically the allegations of the EEOC and the reasons for her termination that we do not consent as to her being questioned.").

The Court finds that facts related to Ms. Moreno's past employment with Plaintiff during the time she and Defendant worked together, as well as her present employment with Defendant in a business that directly competes with Plaintiff, are relevant to the merits of Plaintiff's claims for breach of contract and the FDUTPA. Particularly, these facts might be relevant to prove Plaintiff's allegations that Defendant used Plaintiff's employees, business assets, and resources to operate his business competing directly with Plaintiff. Mot. at 2; *see also* Compl. at 2. Such information might be also relevant towards Defendant's assertion that Plaintiff's "losses were caused in part by [Ms. Moreno's] poor work performance." Mot. at 2. Moreover, Ms. Moreno's

romantic involvement with Defendant might be relevant to such claims and to her credibility as a witness in the instant case. *Id.* Therefore, Plaintiff's explanations are sufficient to meet its initial burden for these facts.

However, Plaintiff fails to persuade the Court that facts related to Ms. Moreno's EEOC charge against it are relevant. Plaintiff has not made clear to the Court how exactly Ms. Moreno's EEOC allegations are relevant to Defendant's claims against it besides pointing to her credibility as a witness. Because her credibility as a witness can already be challenged through her romantic involvement with Defendant, Plaintiff's explanation for the relevance of these facts makes this discovery "cumulative and duplicative." Fed. R. Civ. P. 26(b)(2)(C). If anything, Plaintiff appears be seeking information that might be relevant to challenge the EEOC charge through Ms. Moreno's deposition in this case. Particularly telling is the fact that Mr. Pearman, Plaintiff's counsel in the EEOC charge, was attending Ms. Moreno's deposition by phone. Mot. at 3. Mr. Pearman's attendance suggests that Plaintiff is trying to engage in an "speculative fishing expedition" to effectively kill two birds with one stone. *See Murphy*, 619 F.3d at 1163. Hence, Plaintiff has failed to meet its burden regarding these facts.

Accordingly, Plaintiff's Motion to Compel is GRANTED as to the information regarding Ms. Moreno's past employment as it relates to the time she and Defendant worked together, her present employment, and her romantic involvement with Defendant. Further, it is DENIED as to any information regarding Ms. Moreno's past employment as it relates to the basis of her EEOC charge.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff Camoco, LLC's "Emergency Motion to Extend Discovery Deadline and Compel Deposition of Non-Party Witness" (ECF No. 79) is

**GRANTED IN PART** and **DENIED IN PART**.[6] The parties **SHALL COMPLY** with the instructions provided in this Memorandum Order.

So **ORDERED** and **SIGNED** this 19th day of November 2019.

_____
DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

---

[6] Under Federal Rule of Civil Procedure 37(a)(5), a movant may request attorney's fees and payment of reasonable costs incurred in the filing of a motion to compel that was granted. However, Rule 37(a)(5)(C) explains "[i]f the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Plaintiff did not request any relief under Rule 37(a)(5), and so the Court does not reach the question of the payment of expenses. Going forward, however, should the Court be called upon to resolve any further discovery disputes, it will not hesitate to sanction the non-prevailing party if it is found to have acted unreasonably.